**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

PAT BEESLEY, NELDA KISTLER,                    )
FREDDIE KINGERY, GREG MARTIN,                  )
RON MILLER, WILLIE MITCHELL,                   )
ANTHONY REED, DAVID MILLER,                    )
JOHN TONELLE, PAUL GLENNEY,                    )
and GARY GRISCOTT, As Representatives of       )
a Class of Similarly Situated Persons, and on  )
Behalf of the International Paper Company       )
Salaried and  Hourly Savings Plans,            )
                                               )
        Plaintiffs,                            )
                                               )
v.                                             )        Civil No. 06-703-DRH
                                               )
INTERNATIONAL PAPER COMPANY,                   )
THE INTERNATIONAL PAPER 401(k)                 )
COMMITTEE, ROBERT FLORIO, THOMAS               )
A. KLIMAN, MARK LEHMAN, ETHEL A.               )
SCULLY, JOHN BALBON, BOB HUNKELER,             )
JEROME N. CARTER, INTERNATIONAL                )
PAPER COMPANY MANAGER -SALARIED                )
COMPENSATION,  INTERNATIONAL                   )
PAPER COMPANY DIRECTOR,                        )
CORPORATE FINANCE, INTERNATIONAL               )
PAPER COMPANY SENIOR MANAGER –                 )
COMMUNICATIONS,                                )
                                               )
        Defendants.                            )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR**
**IMPROPER VENUE OR TO TRANSFER VENUE**

Plaintiffs, on behalf of a putative class of current and former participants in the

International Paper Company Hourly Savings Plan and the International Paper Company

Salaried Savings Plan (the "Plans"), have asserted claims against International Paper Company

and a number of individuals who are alleged to be fiduciaries of the Plans, alleging that the

Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA") by:

- Allowing the Plans to pay excessive administrative, recordkeeping and investment management fees to parties providing those services to the Plans;

- Failing to disclose to the Plans' participants the alleged payment of excessive administrative fees; and

- Communicating allegedly misleading "benchmarks" for measuring investment performance to the Plans' participants.

Defendants bring this Motion to Dismiss for Improper Venue or to Transfer Venue because not a single Defendant or material witness or piece of evidence with respect to the events alleged in the Complaint can be found in the Southern District of Illinois, and not a single complained-of event or decision was initiated, conceived, or occurred in the Southern District of Illinois. Indeed, the only connection between this lawsuit and the Southern District of Illinois lies in the fact that two of the eleven Plaintiffs happen to reside in this District.

As set forth more fully below, this fact is insufficient to make the Southern District of Illinois a proper venue for this action. Alternatively, if this District is deemed a proper venue, then this fact is more than sufficient to require a transfer of venue to the Western District of Tennessee, where the bulk of the parties, witnesses, and evidence pertinent to the Plaintiffs' claims are located or managed.

## STATEMENT OF FACTS[1]

Defendant International Paper Company ("IP" or the "Company") is a paper products company headquartered in Memphis, Tennessee. (Affidavit of James P. Barry, D.ApxI Exh. 1 ("Barry Aff.."), ¶ 4.) IP does not maintain any facilities or own or lease real property in the Southern District of Illinois. (¶¶ 5-6.) IP is the sponsor of the Plans, which are defined

---

[1] Defendants have filed contemporaneously Defendants' Appendix Volume I ("D.ApxI"), which contains the materials cited as exhibits ("Exh.").

contribution pension plans as described in ERISA, 29 U.S.C. § 1102(34). (Compl. ¶ 31.) The named fiduciary of the Plans is Defendant International Paper 401(k) Committee (the "Committee"). (Affidavit of Robert Florio, D.ApxI Exh. 2 ("Florio Aff."), ¶¶ 4-5; Florio Aff. Exh. A § 14.01; Florio Aff. Exh. B § 14.01; Affidavit of David Arick, D.ApxI Exh. 3 ("Arick Aff."), ¶ 4; Affidavit of Alicen Francis, D.ApxI Exh. 4 ("Francis Aff."), ¶ 4; Affidavit of Richard Haskell, D.ApxI Exh. 5 ("Haskell Aff."), ¶ 4; Affidavit of Robert Wenker, D.ApxI Exh. 6 ("Wenker Aff."), ¶ 4.).) All of the Committee members are employed at IP's Memphis headquarters and reside in the Western District of Tennessee. (Florio Aff. ¶ 5; Arick Aff. ¶¶ 3-4; Francis Aff. ¶¶ 3-4; Haskell Aff. ¶¶ 3-4; Wenker Aff. ¶¶ 3-4.) The Committee meets regularly and exclusively in Memphis, Tennessee. (Florio Aff. ¶ 5; Arick Aff. ¶ 4; Francis Aff. ¶ 4; Haskell Aff. ¶ 4; Wenker Aff. ¶ 4.)

Pursuant to its appointment powers in § 14.01 of the governing Plan documents, the Committee has appointed Defendant Robert Florio, IP's Director of Employee Benefits, as Plan Administrator as defined in ERISA, 29 U.S.C. § 1102(16)(A). (Florio Aff. ¶ 3; Florio Aff. Exh. A § 14.01; Florio Aff. Exh. B § 14.01.) The governing Plan documents give Mr. Florio, as Plan Administrator, authority over almost all aspects of Plan administration, including:

> The Plan Administrator shall maintain records and accounts respecting the administration of the Plan and keep in convenient form all such data as may be necessary for the valuation of the Plan and shall submit a report from time to time and at least once a year to the 401(k) Committee giving an account of the operation of the Plan. The Plan Administrator shall prepare, distribute and file such reports and notices as may be required by applicable laws and regulations.

(Florio Aff. Exh. A § 14.01(b); Florio Aff. Exh. B § 14.01(b).) Mr. Florio is employed at IP's Memphis headquarters, resides in the Western District of Tennessee, and performs all of his responsibilities as Plan Administrator in Memphis. (Florio Aff. ¶ 3.) Mr. Florio maintains or

has access to records related to Plan administration in Memphis, and Mr. Florio reports to and meets with the Committee on the status of the Plans' operations in Memphis. (¶¶ 4-5.)

Assisting Mr. Florio with day-to-day administration of the Plans is IP's Benefits Department. (¶ 10.) There are eight employees in the Benefits Department with specific administrative responsibilities over the Plans, including preparing and approving communications to Plan participants, interacting with the Plans' recordkeeper and payroll services provider, and monitoring the Plans' payment of certain administrative expenses. (Id.) All eight of these Benefits Department employees work in Memphis; seven reside in the Western District of Tennessee and one resides just across the Mississippi River in West Memphis, Arkansas in the Eastern District of Arkansas. (Id.)

IP's Accounting Department (located in Memphis) has responsibility for insuring the proper funding of the Plans via employee and matching contributions and assisting the outside auditors in the Plans' annual audit. (¶ 11.) The Plans' outside auditors, Deloitte & Touche LLP, who certify the Plans' audited financial statements (reflecting the payment of administrative expenses by the Plans), are located in Memphis. (¶ 12.)

IP has engaged a recordkeeper, trustee, payroll service provider, consultants, investment managers, and financial services professionals to assist in the administration of the Plans. (Florio Aff. ¶ 13; Affidavit of Robert Hunkeler, D.ApxI Exh. 7 ("Hunkeler Aff."), ¶ 6; Affidavit of Diane C. Meess, D.ApxI Exh. 8 ("Meess Aff."), ¶ 5; Affidavit of Sharon Barger, D.ApxI Exh. 9 ("Barger Aff."), ¶ 5.) None of these professionals is located in the Southern District of Illinois, none of these professionals performed any services for the Plans in the Southern District of Illinois, and no records relating to the services provided by or fees or expenses charged by these

professionals can be found in the Southern District of Illinois.  (Florio Aff. ¶ 13; Hunkeler Aff. ¶¶ 6-7; Meess Aff. ¶ 5; Barger Aff. ¶ 5.)

The Plans' trust agreement and the contracts governing the recordkeeping, payroll services, and consulting relationships (other than investment consulting), including the compensation of these service providers, were negotiated by IP personnel in Memphis (Meess Aff. ¶¶ 5-6.)  The Plans' recordkeeper, JP Morgan Retirement Plan Services LLC ("JP Morgan"), maintains all participant records at its headquarters in Kansas City, Missouri, and has established an electronic portal in (and accessible exclusively from) IP's Memphis headquarters for Benefits Department employees to access these records.  (Barger Aff. ¶¶ 6-7.)  JP Morgan employees travel regularly to Memphis to meet with IP employees who have responsibilities related to the Plans.  (¶ 6; Meess Aff. ¶ 7.)

JP Morgan also participates in the design and drafting of Plan communications.  (Florio Aff. ¶ 16; Hunkeler Aff. ¶ 8; Meess Aff. ¶ 9; Barger Aff. ¶ 10.)  Written Plan communications, including all of the allegedly misleading communications, are initially designed and drafted in Kansas City, Missouri, Memphis, Tennessee, or Stamford, Connecticut.  (Id.)  Prior to distribution to participants, written Plan communications are sent for review and approval to IP employees in the Benefits, Legal, and Corporate Communications Departments, all of whom are located in Memphis.  (Id.)  No communications were created in or disseminated from the Southern District of Illinois, and no witnesses or documents pertinent to any communications are located there.   (Florio Aff. ¶ 17; Hunkeler Aff. ¶ 9; Meess Aff. ¶ 9; Barger Aff.¶ 10.)

The Plans' payroll services provider is Hewitt, Inc. ("Hewitt").  (Meess Aff. ¶ 6, 8; Barger Aff. ¶ 8)  Hewitt creates and maintains interfaces between IP and JP Morgan integral to administration of the Plans.  (¶ 9.)  Representatives of Hewitt and JP Morgan participate in

biweekly conference calls with employees from IP's Benefits Department in Memphis. (¶ 8.) Hewitt was located in Memphis until the spring of 2006, when it relocated to The Woodlands, Texas. (¶ 9; Meess Aff. ¶ 8.)

Pursuant to its appointment powers in § 14.01 of the governing Plan documents, the Committee has appointed Defendant Robert Hunkeler as Plan Financial Officer. (Hunkeler Aff. ¶ 3.) Mr. Hunkeler's responsibilities as Plan Financial Officer include determining the investment strategies for each of the investment options in the Plans and selecting, appointing, and monitoring the Plans' trustees and investment managers. (¶ 4; Florio Aff. Exh. A § 14.01(a); Florio Aff. Exh. B § 14.01(a).) Contracts governing investment management and investment consulting (including compensation for these service providers) were negotiated by IP personnel in Stamford, Connecticut. (Hunkeler Aff. ¶ 6.) Mr. Hunkeler and all other employees in IP's Trust Investments Department with specific responsibilities relating to the Plans work in Stamford, Connecticut and report to IP management in Memphis, Tennessee. (¶ 4.) As a result, Mr. Hunkeler travels periodically to Memphis. (¶ 5.)

The Plan documents require Mr. Hunkeler to report to the Committee to give "an account of the operation of the Trust Fund." (Florio Aff. Exh. A § 14.01(a); Florio Aff. Exh. B § 14.01(a).) Mr. Hunkeler presents his reports to the Committee during their meetings in Memphis either in person or via videoconference from his location in Stamford, Connecticut. (Hunkeler Aff. ¶ 5.)

There are 59,919 employees and former employees in the United States participating in the Plans. (Florio Aff. ¶ 14.) Of these 59,919 total participants, the largest single concentration, 2,714 (approximately 4.5%), resides in the Western District of Tennessee. (Id.) By contrast, only 83 participants (approximately 0.14%) reside in the Southern District of Illinois. (Id.) The

Plans have approximately $4.33 billion in total assets maintained by trustee State Street Bank. (¶ 15.)  State Street Bank has no offices in the Southern District of Illinois and none of the Plans' assets are maintained under the control or custody of State Street Bank in the Southern District of Illinois. (¶.)  Only $2.9 million, or approximately 0.07%, of the Plans' assets are allocated on the Plans' records to the 83 participants residing in the Southern District of Illinois.  (¶ 15.)  None of these participants earned these Plan allocations by performing services for IP in the Southern District of Illinois.  (Id.)  Finally, the Complaint was not filed in the Southern District of Illinois for the convenience of the Plaintiffs.  Of the eleven named Plaintiffs, only two reside in the Southern District of Illinois.  (See Compl. ¶¶ 12-13.)

In sum, not a single Defendant, witness, or document pertinent to Plaintiffs' claims can be found in the Southern District of Illinois, and not a single event complained of in the Complaint occurred or was planned or was initiated in the Southern District of Illinois.  The only nexus between the Plaintiffs' claims and this District is the happenstance that two of them reside in this District.

## ARGUMENT

### I.      THIS DISTRICT IS AN IMPROPER VENUE.

Proper venue in ERISA actions is governed by ERISA's specific venue statute, 29 U.S.C. § 1132(e)(2), rather than the general federal venue statute, 28 U.S.C. § 1391.  Waeltz v. Delta Pilots Ret. Plan, 301 F.3d 804, 807 (7th Cir. 2002); Laurent v. PricewaterhouseCoopers LLP, No. 04-809-GPM, 2005 WL 1221304, at *1 (S.D. Ill. May 20, 2005) (Murphy, C.J.). ERISA's venue statute provides:

> Where an action under this subchapter is brought in a district
> court of the United States, it may be brought in the district where the
> plan is administered, where the breach took place, or where a defendant
> resides or may be found, and process may be served in any other district

where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2).

There can be no dispute that the Plans are "administered" in the Western District of Tennessee.  (See Florio Aff. ¶¶ 3-5, 10-12, 16-17; Barger Aff. ¶¶ 3-10.)  Moreover, IP, the members of the Committee, and all of the individual Defendants (except Robert Hunkeler and Ethel Scully, who reside in the District of Connecticut) reside in the Memphis area, in the Western District of Tennessee.  (Florio Aff. ¶ 3; Hunkeler Aff. ¶ 3; Arick Aff. ¶¶ 3-4; Francis Aff. ¶¶ 3-4; Haskell Aff. ¶¶ 3-4; Wenker Aff. ¶¶ 3-4; Affidavit of John Balboni, D.ApxI Exh. 10 ("Balboni Aff."), ¶ 3; Affidavit of Ethel Scully, D.ApxI Exh. 11 ("Scully Aff."), ¶ 3; Affidavit of Thomas Kliman, D.ApxI Exh. 12 ("Kliman Aff."), ¶ 3; Affidavit of Mark Lehman, D.ApxI Exh. 13 ("Lehman Aff."), ¶ 3; Affidavit of Jerome Carter, D.ApxI Exh. 14 ("Carter Aff."), ¶ 3.)  Plaintiffs allege two reasons they believe venue is proper in the Southern District of Illinois under § 1132(e)(2):

> (A)  the breaches of fiduciary duty giving rise to this action occurred in this district in that Plaintiffs/Class Representatives Pat Beesley and Nelda Kitsler reside in this district, participated in the Hourly Plan from this district, received statements, Plan summaries, financial statement summaries, year-in-review booklets, and other information from the Defendants in this district, and suffered damages in this district; and/or (B)  the Defendants may be found in this district and has [sic] employees in this district.

(Compl. ¶ 46.)  These allegations are incorrect.

The claims in this action concern the fees and expenses paid by the Plans for administrative services.  (¶¶ 7-9, 11.)  Plaintiffs contend the Defendants breached ERISA fiduciary duties to the Plans as a whole; indeed, Plaintiffs purport to bring this action on behalf of a nationwide class of Plan participants (¶ 48), by allegedly causing the Plans to incur and pay excessive fees and expenses.  (¶ 11.)  "[W]hen the plaintiff alleges only a breach of fiduciary

- 8 -

duty, rather than makes a claim for benefits due, the breach is considered to have occurred where defendants acted or failed to act as their duties required." Cross v. Fleet Reserve Ass'n Pension Plan, 383 F. Supp. 2d 852, 856 (D. Md. 2005) (citing McFarland v Yegen, 699 F. Supp. 10, 13 (D.N.H. 1988)). Accord Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 291 (1st Cir. 1999); Cole v. Cent. States S.E. & S.W. Areas Health & Welfare Fund, 227 F. Supp. 2d 190, 195 n.6 (D. Mass. 2001); Brown Schs., Inc. v. Fla. Power Corp., 806 F. Supp. 146, 149 (W.D. Tex. 1992); DiGiovannantonio v. Local 153 Pension Fund, No. 91-7172, 1992 WL 146953, at *1 (E.D. Pa. June 10, 1992).

Accordingly, the "breaches," if any, "took place" where the decisions were made to incur and to pay the allegedly excessive fees and expenses. E.g., Waeltz v. Delta Pilots Ret. Plan, 137 F. Supp. 2d 1091, 1093 (S.D. Ill. 2001), aff'd, 301 F.3d 804 (7th Cir. 2002); Turner v. CF&I Steel Corp., 510 F. Supp. 537, 541 (E.D. Pa. 1981); Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan, 481 F. Supp. 454, 459 (N.D. Ga. 1979). See also Young v. Colgate-Palmolive Co., 790 F.2d 567, 570-71 (7th Cir. 1986) (in a breach of fiduciary duty case, the breach occurs where the fiduciary acts disloyally).

Plaintiffs have not alleged that any of the pertinent decisions were made in the Southern District of Illinois, or that any excessive fees were paid by the Plans to service providers in the Southern District of Illinois, and they cannot make these allegations. Moreover, the residence of Plaintiffs and any conduct or actions by Plaintiffs – including "receiving" and "reviewing" plan-related information – is irrelevant to where the alleged breaches of fiduciary duty took place under 29 U.S.C. § 1132(e)(2). See McFarland, 699 F. Supp. at 13; Boyer, 481 F. Supp. at 459. Because no alleged breach took place in this District, Plaintiffs may not rely on the "where the breach took place" provision to support venue in this District.

Similarly, Plaintiffs' contention that Defendants "may be found" in the Southern District of Illinois fails.  (Compl. ¶ 49.)  Affirming dismissal under Rule 12(b)(3), the Seventh Circuit rejected precisely this contention in <u>Waeltz</u>, holding that a defendant in an ERISA action "can be found in a judicial district if it has the sort of 'minimum contacts' with that district that would support the exercise of personal jurisdiction under the rule of <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)."  <u>Waeltz</u>, 301 F.3d at 810.

With regard to the individual named Defendants and the Committee, none has any contacts with this District such that they would be subject to personal jurisdiction in the Southern District of Illinois.  (<u>See</u> Florio Aff. ¶¶ 3, 5, 10, 18; Hunkeler Aff. ¶¶ 5, 10; Arick Aff. ¶¶ 4-5; Francis Aff. ¶¶ 4-5; Haskell Aff. ¶¶ 4-5; Wenker Aff. ¶¶ 4-5; Balboni Aff. ¶ 4; Scully Aff. ¶ 4; Kliman Aff. ¶ 4; Lehman Aff. ¶ 4; Carter Aff. ¶ 4.)  Indeed, most of the individual Defendants have never even set foot in the Southern District of Illinois.  (Florio Aff. ¶ 18; Hunkeler Aff. ¶ 10; Balboni Aff. ¶ 4; Scully Aff. ¶ 4; Kliman Aff. ¶ 4; Carter Aff. ¶ 4.)  Moreover, IP does not maintain any facilities in or own or lease property in the Southern District of Illinois.  (Barry Aff. ¶¶ 5-6)  Although some of IP's products may flow into the Southern District of Illinois through the stream of commerce, IP does not purposefully direct its products into the District (¶ 7), and therefore its contacts with the District would not satisfy the standards of <u>International Shoe</u>. <u>Asahi Metal Indus. Co., Ltd. v. Superior Ct.</u>, 480 U.S. 102, 108-12 (1987); <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472-73 (1985); <u>Jennings v. AC Hydraulic A/S</u>, 383 F.3d 546, 549-51 (7th Cir. 2004); <u>Cent. States S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.</u>, 230 F.3d 934, 944 (7th Cir. 2000).

Moreover, in <u>Waeltz</u>, the Seventh Circuit specifically rejected Plaintiffs' contention that venue is proper because IP "has employees" in the Southern District of Illinois.  The Seventh

Circuit observed that when courts in ERISA actions have "held that the defendant had sufficient contacts to support venue, . . . in none of them was the mere residency of plan participants considered a sufficient contact by itself to support a conclusion that the defendant could be found in the district."  Waeltz, 301 F.3d at 810.  The Seventh Circuit reasoned:

> The mere residence in the district of two Plan participants out of 2,740, absent any other contact between the Plan and the district, does not justify the exercise of personal jurisdiction over the Plan under the minimum contacts approach . . . that we have endorsed . . . .

Id.  Parallel circumstances exist in this case.  As of November 2, 2006, there were 59, 919 total participants in the Plans.  (Florio Aff. ¶ 14.)  Of these 59,919 participants, not a single one works in, and therefore none accrues benefits in, the Southern District of Illinois.  (Id.)  Only 83 (0.14%) actually live in the Southern District of Illinois, similar to the 0.1% residing in this District in Waeltz, and there are no other contacts between the Plan and this District.  (Florio Aff.¶¶ 3, 5, 10-11, 13-18; Arick Aff. ¶¶ 3-7; Francis Aff. ¶¶ 3-7; Haskell Aff., ¶¶ 3-7; Wenker Aff. ¶¶ 3-7; Hunkeler Aff. ¶¶ 4-5, 7, 9, 10-12; Meess Aff. ¶¶ 5, 9-12; Barger Aff. ¶¶ 3-13; Balboni Aff. ¶¶ 4-6; Scully Aff. ¶¶ 4-6; Kliman Aff. ¶¶ 4-6; Lehman Aff. ¶¶ 4-6; Carter Aff. ¶¶ 4-6.)  Accordingly, and particularly in light of Waeltz, Plaintiffs are simply incorrect in their allegation that Defendants "may be found" in the Southern District of Illinois.  Waeltz, 301 F.3d at 810-11.  This District is not a proper venue under ERISA, and Waeltz requires dismissal of this action for improper venue.

## II.    IF THIS COURT DOES NOT DISMISS FOR IMPROPER VENUE, THEN IT SHOULD TRANSFER VENUE.

Alternatively, this Court should transfer this action to the Western District of Tennessee pursuant to 28 U.S.C. § 1406(a) or § 1404(a).  Section 1406(a) authorizes this Court, where a case is filed "in the wrong district or division," "if it be in the interest of justice, [to] transfer [a]

case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Pursuant to 28 U.S.C. § 1404(a), "For convenience of parties and witnesses, in the interests of

justice, a district court may transfer any civil action to any other district or division where it

might have been brought."[2] "Section 1404(a) reflects an increased desire to have federal civil

suits tried at the place called for in the particular case by considerations of convenience and

justice." Van Dusen v. Barrack, 376 U.S. 612, 616 (1965).

     In determining whether to transfer a case pursuant to the transfer statutes, district courts

in the Seventh Circuit consider:  (i) whether the case could have been filed in the transferee

forum, (ii) the parties' contact, or lack thereof, with the alternative forums, (iii) the location of

the documents and exhibits, (iv) the location of the witnesses, (v) the availability of compulsory

process, and (vi) the caseloads in the alternative forums. Pothier v. Bank of Am. Corp.,

No. 3:04-CV-458-GPM, slip op. at 3-7 (S.D. Ill. May 18, 2005) (Murphy, C.J.) (copy attached as

D.ApxI Exh. 15); Forcillo v. LeMond Fitness, Inc., 220 F.R.D. 550, 552-54 (S.D. Ill. 2004)

(Reagan, J.); Nelson v. Aim Advisors, Inc., No. 01-CV-0282-MJR, 2002 WL 442189, at *3-*6

(S.D. Ill. March 8, 2002) (Reagan, J.); Bryant v. ITT Corp., 48 F. Supp. 2d 829, 832-35 (N.D. Ill.

1999); Hanley v. Omarc, Inc., 6 F. Supp. 2d 770, 774-77 (N.D. Ill. 1998); Cent. States, S.E. &

S.W. Areas Pension Fund v. KAW Transp. Co., No. 96-C-7935, 1997 WL 135680, at *3-*5

(N.D. Ill. March 21, 1997).  See also e.g., Finley v. Dunn & Bradstreet Corp., No. 05-C-5134,

2006 WL 861920, at *2-*5 (N.D. Ill. March 30, 2006).

---

[2]  According to the Seventh Circuit, §§ 1406(a) and 1404(a) impose "the same conditions," other than in the former venue is improper while in the latter venue is proper, for the transfer of an action from one federal district court to another. Wild v. Subscription Plus, Inc., 292 F.3d 526, 530 (7th Cir. 2002). See also Cote v. Wadel, 796 F.2d 981, 985 (7th Cir. 1986) ("a transfer under section 1404(a) is proper in the same circumstances that it would be if venue had been improper, notwithstanding the small difference in wording between 1404(a) and 1406(a) ('may' versus 'shall')").  Accordingly, references in this memorandum to § 1404(a) implicate § 1406(a) as well.

A.    **VENUE WOULD BE PROPER IN THE WESTERN DISTRICT OF TENNESSEE.**

Because this memorandum has already analyzed whether venue is proper in this District, the transfer analysis begins with whether venue would be proper in a transferee forum.  E.g., Forcillo, 220 F.R.D. 552; Nelson, 2003 WL 442189, at *4; Van Ru Credit, 2003 WL 22462607, at *3.  IP's headquarters are in Memphis, the Plans are, and at all times material to the Complaint were, administered in Memphis, and the alleged ERISA breaches took place there.  All of the individually named Defendants except Robert Hunkeler and Ethel Scully reside in the Western District of Tennessee.  Accordingly, pursuant to 29 U.S.C. § 1132(e)(2), venue would be proper in the Western District of Tennessee.

B.    **THE CONVENIENCE OF THE PARTIES AND ALL PRIVATE INTERESTS COMPEL TRANSFER OF VENUE.**

1.    **Plaintiffs' Choice of Forum is Not Unfettered.**

Although an ERISA plaintiff's choice of forum is traditionally given deference, as this Court has explained, "Plaintiff's choice of forum is given less weight where another forum bears a stronger relationship to the dispute."  Deist v. Wash. Univ. Med. Ctr., 385 F. Supp. 2d 772, 774 (S.D. Ill. 2005) (Stiehl, J.).  "Examples of when defendant's motion to transfer outweighs defendant's chosen forum include:  when none of the conduct complained of occurred in that forum, when both parties must rely on evidence of events entirely removed from that district, and when plaintiff is not a resident of the judicial district where the case is brought."  Goodin v. Burlington N. R.R. Co., 698 F. Supp. 157, 158-59 (S.D. Ill. 1988) (Stiehl, J.)

a.    ***Where, as Here, Plaintiffs Purport to Represent a Class, Their Choice of Forum is Entitled to Less Deference.***

It is widely recognized that the plaintiff's choice of forum is accorded little weight in the context of a nationwide putative class action, and especially where, as here, only a tiny fraction

of the putative class has any connection with the chosen forum. Pothier, slip op. at 3 (D.ApxI Exh. 15, p. 3) ("courts have held that when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight"); Finley, 2006 WL 861920, at *2 (noting in transferring ERISA action to New Jersey, "deference shown a plaintiff's choice of forum is diminished where, as here, Plaintiff is a representative of a class"). E.g., In re Warrick, 70 F.3d 736, 741 n.7 (2d Cir. 1995); Lou v. Belzberg, 834 F.2d 730, 734 (9th Cir. 1987); Owner-Operator Indep. Drivers Ass'n, Inc. v. N. Am. Van Lines, Inc., 382 F. Supp. 2d 821, 824 n.4 (W.D. Va. 2005); Berenson v. Nat. Fin. Servs., LLC, 319 F. Supp. 2d 1, 3 (D.D.C. 2004); Genden v. Merrill, Lynch, Pierce, Fenner & Smith, 621 F. Supp. 780, 782 (N.D. Ill. 1985) (Rovner, J.); Blumenthal v. Mgmt. Assistance, Inc., 480 F. Supp. 470, 472 (N.D. Ill. 1979).[3] See also Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947) ("But where there are hundreds of potential plaintiffs, all equally entitled voluntarily to [bring the claims] and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.").

> **b.     Where, as Here, the Plaintiffs' Chosen Forum Has Little or No Connection with the Claims Asserted, It is Entitled to Little Deference.**

Consistent with rulings from numerous Seventh Circuit district courts, the Northern District of Illinois has explained that "the weight given to a plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim." Van Ru Credit Corp. v. Prof'l Brokerage Consultants, Inc., No. 03-C-1170, 2003

---

[3]  Indeed, some courts in the Seventh Circuit have characterized the plaintiff's choice of forum in a class action as "irrelevant." Nelson, 2002 WL 442189, at *3-*4; Georgouses v. NaTec Res., Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997). But see Chamberlain v. US Bancorp Cash Balance Ret. Plan, No. 04-CV-841-DRH, 2005 WL 2757921, at *3 (S.D. Ill. Oct. 25, 2005) (disagreeing with Nelson and Georgouses in concluding, "The fact that a Plaintiff sues on behalf of a class does not render her forum choice completely irrelevant.") (Herndon, J.).

WL 22462607, *4 (N.D. Ill. Oct. 29, 2003).  See, e.g., Biessbarth USA, Inc. v. KW Prods., Inc., No. 04-C-7738, 2005 WL 38741, at *5 (N.D. Ill. Jan. 6, 2005) (transferring to Iowa because "few, if any, of the material events underpinning this case occurred in this district while a significant number of material events occurred in the Northern District of Iowa"); Canade v. Grumman Corp., No. 93-C-6628, 1994 WL 87307, at *2 (N.D. Ill. March 16, 1994) (transferring ERISA case to New York "[g]iven the virtually complete absence of any connection to this forum").[4]

Given the absence of any connection between the Southern District of Illinois and the claims asserted in the Complaint, Plaintiffs' choice of forum is entitled to little or no deference.

### 1    The Southern District of Illinois is Not a Convenient Forum for the Parties.

#### a.    Only Two of the Eleven Named Plaintiffs Live in the Southern District of Illinois, and the Plaintiffs Themselves Will Have Little or No Role in Proving the Claims in this Action.

Only two of the eleven named Plaintiffs live in the Southern District of Illinois.  Thus, even the named Plaintiffs' contact with the Southern District of Illinois is minimal.  See Pothier, slip op. at 5 (D.ApxI Exh. 15, p. 5) (noting that the Southern District of Illinois was not convenient for plaintiffs because only one of several named plaintiffs resided there); Aschbacher v. Delta Pilots Ret. Plan, No. 00-6086, slip op. at 4 (D. Or. Aug. 7, 2000) (copy attached as D.ApxI Exh. 16, p. 4) ("In sum, the only justification for maintaining this action in Oregon is the fact that one named plaintiff resides in this district.  The court finds this factor significantly outweighed by the numerous factors supporting transfer.").

---

[4]  Accord Bryant, 48 F. Supp. 2d at 832 (giving less deference to plaintiff's choice of forum and transferring ERISA case to Kentucky); Hanley, 6 F. Supp. 2d at 775 (same, transferring ERISA case to New Jersey); KAW Transp., 1997 WL 135680, at *4 (same, transferring ERISA case to Missouri).  See also Finley, 2006 WL 861920, at *3 ("The deference given to a plaintiff's choice of forum is also diminished where the situs of material events occurred in the alternative forum.").

Equally important, none of the Plaintiffs or putative class members accrued any benefits under the Plans through the performance of services for IP in the Southern District of Illinois. Pothier, slip op. at 5 (D.ApxI Exh. 15, p. 5) ("there are, however, an additional 750 employees who live in the Southern District of Illinois, but because they do not work in the Southern District of Illinois, they do not accrue benefits here, and they do not receive communications regarding the Pension Plan here"). Only a tiny fraction – **0.14%** – of the putative class members even reside in the Southern District of Illinois, far less than the 0.72% of Plan participants found insufficient to prevent a transfer of venue from this District in Pothier. Id. at 4-5 (D.ApxI Exh. 15, pp. 4-5).[5] (Florio Aff. ¶ 14.) Thus, the putative Plaintiff class has virtually no connection with the Southern District of Illinois. Cf. Nelson, 2002 WL 442189, at *5 ("[A]lthough there are certainly putative class members in the Southern District of Illinois, as there are nationwide, there is no special relation between this community and the alleged occurrences. Therefore, there is no specific desire or need to resolve this controversy in this district as opposed to the clearly more convenient transferee districts.").

Moreover, because Plaintiffs are bringing this action as a putative class action, the convenience for the Plaintiffs of any forum is practically irrelevant. The individual named Plaintiffs will have almost no role in discovery or trial, because their claims depend on the actions of the Defendants. Indeed, their claims will rise or fall not on their testimony or physical evidence in their possession, but on evidence showing what the Plans paid for administrative services, to whom, and what they got in return, none of which can be found in this District. So whether this District is convenient for the Plaintiffs is not a probative factor in this case.[6]

---

[5]  Chief Judge Murphy noted that approximately 100 plan participants in Pothier worked in this District and an additional 750 resided in this District. The plan in Pothier had a total of 111,800 participants.
[6]  E.g., Howell v. Shaw Indus., No. 93-2068, 1993 WL 387901, at *5 (E.D. Pa. Oct. 1, 1993) ("[I]n a class action, such as this, the testimony offered by the plaintiff is likely to be minimal . . . The critical evidence, both testimonial

   **b.**  ***None of the Defendants and None of the Sources of Proof (for Any Party) Are Located in the Southern District of Illinois.***

  "A fundamental principle guiding the Court's analysis is that litigation should proceed in that place where the case finds its 'center of gravity.' " <u>Laitram Corp. v. Hewlett-Packard Co.</u>, 120 F.Supp.2d 607, 609 (E.D. La. 2000) (citation and quote marks omitted). <u>E.g.</u>, <u>Worldwide Fin. LLC v. Kopko</u>, No. 1:03-CV-0428-DFH, 2004 WL 771219, at *4 (S.D. Ind. 2004) (transferring action because "Illinois is clearly the center of gravity of the case"). The Southern District of Illinois could not plausibly be called the "center of gravity" for any aspect of this case.

  As set forth above, not a single act or event alleged in the Complaint occurred in this District. None of the Plans' assets, alleged to have been improperly spent by the Defendants, can be found in this District, nor can any custodian or trustee thereof. None of the Defendants or the Plans' service providers provided any services to the Plans in the Southern District of Illinois, much less any services that would be implicated by the Plaintiffs' claims, and none received any payment from the Plans here. Perhaps most importantly, none of the decisions or actions alleged to violate ERISA were made or occurred here.

  Again, the case in point is <u>Pothier</u>. Noting that "the only connection that the Court can find to the Southern District of Illinois is that . . . of the 111,800 Pension Plan participants with 'cash balance accounts,' approximately 100 worked and accrued benefits in the Southern District of Illinois . . . [and] . . . an additional 750 employees . . . live in the Southern District of Illinois," Chief Judge Murphy concluded that the residence of 0.72% of the ERISA Plans' participants in this District was insufficient to establish a connection with the District, much less a center of

---

and documentary to sustain the claims of the complaint must come from other sources, particularly from documents within the defendants' control . . .") (citation and quote marks omitted); <u>Impervious Paint Indus., Ltd. v. Ashland Oil, Inc.</u>, 444 F. Supp. 465, 467 (E.D. Pa. 1978) ("First, there is no showing that plaintiff's officers will be required to participate extensively in the trial, or that their attendance will be required by counsel. Their testimony, in fact, may be quite perfunctory, outlining only their dealings with the defendants.").

gravity here. <u>Pothier</u>, slip op. at 4-5 (D.ApxI Exh. 15, pp. 4-5) (footnote omitted).   Chief Judge

Murphy went on to find that most of the defendants were located in the transferee District, the

complained-of acts had occurred there, and "essential plan functions are coordinated and

supervised" there, concluding that "this is not even a close case." <u>Id.</u> at 4 (D.ApxI Exh. 15, p. 4).

        Addressing witnesses, Chief Judge Murphy reasoned: "The Court is not sure at this point

who the witnesses will be, but Plaintiffs' second amended complaint attacks the decisions made

in designing and administering the Plans and charges all those in any way related to decisions.

Therefore, it is reasonable to look to where those decisions were made and to where the decision

makers may be found." <u>Id.</u> at 6 (D.ApxI Exh. 15, p. 6).

        The facts are even more compelling here.  The Plans that are at the heart of the Plaintiffs'

claims are sponsored by IP, which is headquartered in the Western District of Tennessee, and are

administered in all material respects by IP personnel, most of whom reside in the Western

District of Tennessee.  Moreover, Mr. Hunkeler, who does not reside in the Western District of

Tennessee, reports directly to management residing in the Western District of Tennessee, and

visits IP's headquarters periodically to report to management.  (Hunkeler Aff. ¶¶ 4-5.)  All

communications to the Plans' participants were designed and drafted by the Plans' recordkeeper

in Kansas City or the Plans' administrative personnel in the Western District of Tennessee or in

Stamford, Connecticut by IP personnel reporting to management in the Western District of

Tennessee – and all of these communications were reviewed and approved by IP personnel in

Memphis prior to distribution.   (Florio Aff. ¶ 16; Hunkeler Aff. ¶ 8; Meess Aff. ¶ 9; Barger Aff.

¶ 10.)  All of the agreements that are at the heart of Plaintiffs' claims were negotiated in the

Western District of Tennessee or Stamford, Connecticut.  (Hunkeler Aff. ¶ 6; Meess Aff. ¶¶ 5-6.)

Major plan service providers, such as recordkeeper JP Morgan and payroll services provider

Hewitt, interact regularly with IP personnel located in Memphis.  Finally, the largest single concentration of putative class members work and accrue benefits under the Plans in the Western District of Tennessee as well as reside there.  Accordingly, the "center of gravity" of the Plaintiffs' claims is in the Western District of Tennessee.

Each of the factors cited by Chief Judge Murphy in transferring venue is present in this case, and this Court should follow his well reasoned decision.

### C.    The Southern District of Illinois is Not Convenient for Non-Party Witnesses.

The non-party witnesses implicated by Plaintiffs' claims will include the Plans' auditors, legal advisors, recordkeeper, investment managers and advisors.  Not a single witness with knowledge of any of the allegations contained in the Complaint who is employed by these entities can be found in, or resides in or near, the Southern District of Illinois.  (Florio Aff. ¶¶ 5, 10-13, 17-19; Arick Aff. ¶ 6; Francis Aff. ¶ 6; Haskell Aff. ¶ 6; Wenker Aff. ¶ 6; Hunkeler Aff. ¶¶ 7, 9, 11; Meess Aff. ¶ 5, 11; Barger Aff. ¶¶ 5, 10, 11-13; Balboni Aff. ¶ 5; Scully Aff. ¶ 5; Kliman Aff. ¶ 5; Lehman Aff. ¶ 5; Carter Aff. ¶ 5.)  By contrast, traveling to and interacting with IP personnel in the Western District of Tennessee is a standard component of the services many of these entities provide to the Plans.  For instance, the Plans' auditors are located in Memphis and work closely with IP's Accounting Department (also located in Memphis); the Plans' recordkeeper meets with Benefits Department employees in Memphis and maintains an electronic portal for use by Benefits Department employees in Memphis; and the recordkeeper and payroll services provider (itself formerly located in Memphis) conduct biweekly conference calls with Benefits Department employees in Memphis.

## III.    THE INTERESTS OF JUSTICE DO NOT FAVOR VENUE IN THIS DISTRICT.

"Factors traditionally considered in the interest of justice analysis include the transferee court's familiarity with applicable law and the congestion of both courts' dockets."  Forcillo, 220

F.R.D. at 554.  Transferring this case will not affect the substantive law because all district courts

are presumed equally familiar with federal law.  E.g., Sage Prods., Inc. v. Devon Indus., Inc., 148

F.R.D. 213, 216 (N.D. Ill. 1993); Vanguard Fin. Serv. Corp. v. Johnson, 736 F. Supp. 832, 844

(N.D. Ill. 1990).

Similarly, transferring this action to a forum with an actual connection to the asserted

claims, would not slow adjudication.  This District, the District of Connecticut, and the Western

District of Tennessee are largely indistinguishable in terms of the median times between filing

and disposition of civil cases:  9.9 months in this District, 10.6 months in the District of

Connecticut, and 10.2 months in the Western District of Tennessee.  (See D.ApxI Exh. 17

(Statistical Table for the Federal Judiciary C-5 (June 30, 2005), available at *www.uscourts.gov*.)

E.g., Pothier, slip op. at 7 (D.ApxI Exh. 15, p. 7) (comparing case loads and concluding "[t]his

Court finds no reason that the Western District of North Carolina will not ably and swiftly

adjudicate this action"); Nelson, 2002 WL 442189, at *4 (comparing the median months between

filing and disposition of cases in the districts and concluding "no delay would result from

transferring these cases to the various transferee districts").

**CONCLUSION**

The Southern District of Illinois is not a proper venue for this action.  This case has no

connection to this District.  Defendants respectfully request that this Court dismiss this action for

improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  In the alternative,

Defendants respectfully request that this Court transfer this case to the Western District of

Tennessee pursuant to 28 U.S.C. § 1404(a) or § 1406(a).

Respectfully submitted this 3rd day of November, 2006.

BY    /S/ GREGORY C. BRADEN
      Gregory C. Braden, admitted *pro hac vice*

- 20 -

Georgia Bar No. 074367
Peter M. Varney, admitted *pro hac vice*
Georgia Bar No. 725710
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Telephone (404) 881-7000
Facsimile  (404) 881-7777
greg.braden@alston.com
peter.varney@alston.com

Michael J. Nester, #02037211
Donovan, Rose, Nester & Joley, P.C.
8 East Washington Street
Belleville, Illinois 62220
(618) 235-2020
mnester@ilmoattorneys.com

ATTORNEYS FOR DEFENDANTS
INTERNATIONAL PAPER COMPANY, THE
INTERNATIONAL PAPER 401(k) COMMITTEE,
ROBERT FLORIO, THOMAS A. KLIMAN,
MARK LEHMAN, ETHEL A. SCULLY, JOHN
BALBONI, BOB HUNKELER, JEROME N.
CARTER, INTERNATIONAL PAPER
COMPANY MANAGER -SALARIED
COMPENSATION, INTERNATIONAL PAPER
COMPANY DIRECTOR, CORPORATE
FINANCE, INTERNATIONAL PAPER
COMPANY SENIOR MANAGER -
COMMUNICATIONS

LEGAL02/30126821v5

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2006, I electronically filed the foregoing document

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR**

**IMPROPER VENUE OR TO TRANSFER VENUE** with the Clerk of Court using the

CM/ECF system which will send notification of such filings(s) to the following:

**PLAINTIFFS' COUNSEL:**

|  |  |
|---|---|
| Daniel V. Conlisk | dconlisk@uselaw.com |
| Heather Lea | hlea@uselaws.com |
| Jerome J. Schlichter | jschlichter@uselaws.com |

/S/ GREGORY C. BRADEN
Gregory C. Braden, admitted *pro hac vice*
Georgia Bar No. 074367
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Telephone (404) 881-7000
Facsimile  (404) 881-7777
greg.braden@alston.com